## Darrah v. Oakland Motor Car Company.

*Malicious prosecution — Reasonable cause — Perjury—Automobiles—Purchaser's affidavit—Act of June 30, 1919.*

1. In an action for malicious prosecution brought against defendant for having prosecuted plaintiff for perjury and for failing to file the purchaser's affidavit after buying an automobile, as required by the Act of June 30, 1919, P. L. 702, a compulsory non-suit is properly entered when it appears in the plaintiff's own case that he had bought the car on Aug. 28, 1922, and the purchaser's affidavit had not been filed until Sept. 23, 1922, and that from Sept. 23, 1922, until Nov. 13, 1922, an application for registration bearing plaintiff's name and a notary's signature and seal was on file in the Department of Highways, Harrisburg, which contained untrue statements, although plaintiff was acquitted of both charges, was not personally responsible for the failure to file the purchaser's affidavit and had not made the affidavit containing the untrue statements.

2. Probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused party guilty of the offence.

3. *Semble.* The rule that the institution of a criminal prosecution for the purpose of collecting a civil debt is *prima facie* evidence of want of probable cause and of malice, and shifts to the defendant the burden ordinarily on the plaintiff, does not apply where the prosecution, although perhaps actually prompted by the failure to pay the debt, was nevertheless based on an allegel violation of the law separate and distinct from the indebtedness.

4. Whether the presence of probable cause has been shown rests exclusively with the court.

Motion to take off non-suit. C. P. No. 2, Phila. Co., Sept. T., 1924, No. 564.

*Gordon Butterworth,* for plaintiff.

*M. H. Kratz* and *O. C. Riethmiller,* for defendant.

LEWIS, J., July 12, 1926.—Two bills of indictment, one for perjury and the other for not making and filing a vendee's statement or purchase affidavit upon purchasing a used automobile, were found against the plaintiff prior to this action, following the presentation to a magistrate of two affidavits signed by duly authorized employees of defendant company. Verdicts of not guilty were returned in both cases, and this action for malicious prosecution followed.

It appears that the plaintiff bought from one Lee his interest in an automobile which the latter had leased from the defendant company. This occurred about Aug. 28, 1922, but because of the fact that he was going away on his vacation, the plaintiff permitted Lee to retain possession of the car, and it was not turned over to him until Sept. 22, 1922. On Sept. 23, 1922, plaintiff filed with the Chief of Police of Philadelphia County a vendor-vendee affidavit as required by the Act of June 30, 1919, P. L. 702. Plaintiff testified that, immediately after he received the car, he sent to a notary public a signed application for license tags, and also a signed vendor-vendee statement for the purpose of having his acknowledgment taken and the papers forwarded to Harrisburg. It now appears, according to the testimony, that, unknown to plaintiff, the application and statement signed by him were destroyed and another application, purporting to be signed by plaintiff, though in fact not so signed, was sent to Harrisburg. About Nov. 1, 1922, the plaintiff was notified by the State Highway Department that something was wrong with the application, since it stated that defendant had purchased the car new on Feb. 2, 1922. On Nov. 13, 1922, the plaintiff filed a proper vendor-vendee affidavit in Harrisburg. In the meantime, on Nov. 10th, the two warrants mentioned above had been sworn out, and on Dec. 6, 1922, the plaintiff was arrested thereon.

Darrah v. Oakland Motor Car Company.

In plaintiff's own case, therefore, it was developed (1) that plaintiff purchased the car from Lee on Aug. 28th, when he paid part of the purchase price, and that no vendor-vendee affidavit was filed until Sept. 23, 1922, and (2) that from about Sept. 23, 1922, until about Nov. 13, 1922, an application for registration bearing plaintiff's name and a notary's signature and seal was on file in the Department of Highways in Harrisburg, which application contained untrue statements.

We entered a non-suit at the trial, and now have before us plaintiff's motion to take it off. As the first step in his argument in support of the motion, plaintiff urges that the burden was on defendant to show that it acted upon reasonable cause without malice, because, it is said, the criminal prosecutions were commenced really for the purpose of compelling the payment of a debt. This, the argument proceeds, brings the case within the principle announced in Edwards v. Stull, 82 Pa. Superior Ct. 456; Baughn v. Benson & Fine, 77 Pa. Superior Ct. 181; White v. Rosenbaum Co., 73 Pa. Superior Ct. 99; Delany v. Lindsay, 46 Pa. Superior Ct. 26; MacDonald v. Schroeder, 214 Pa. 411, that a criminal prosecution for such a purpose is *prima facie* evidence of want of probable cause and of malice and shifts to the defendant the burden ordinarily on plaintiff. In all of the cited cases the criminal prosecution was actually based on the alleged indebtedness, and whether the principle of those cases could be applied to such a situation as we have here, where the prosecution, although, perhaps, actually prompted by the failure to pay a debt, was, nevertheless, based on an alleged violation of the law separate and distinct from the indebtedness, is questionable. Regardless, however, of where the burden of proof rested, the question remains whether the plaintiff in his own case negatived the claim that defendant acted without reasonable cause; if he did, the non-suit was properly entered: Taylor v. American International Shipbuilding Corp., 275 Pa. 229.

There were two charges brought against plaintiff, and on both he was acquitted. Did the defendant have probable cause for prosecuting? "What constitutes probable cause has been variously defined. A concise but comprehensive definition is found in McClafferty v. Philp, 151 Pa. 86, and Ritter v. Ewing, 174 Pa. 341, where it is stated to be: 'A reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused party is guilty of the offence.' Other definitions, though differently expressed, are of the same import. The essential element is such a reasonable ground of belief as would cause an ordinarily prudent man to act:" Delany v. Lindsay, 46 Pa. Superior Ct. 26. The first indictment was for failure to file what is known as a vendee's affidavit. The Act of June 30, 1919, § 3, P. L. 702, makes it the duty of all persons who buy, procure or otherwise acquire title to any used motor-vehicle to file in the office of the State Highway Commissioner and also in the office of the local chief of police within ten days after acquiring the vehicle a statement, verified by oath, containing certain information regarding the car and its owners. Violation of any provision of the act is made a misdemeanor.

The plaintiff's testimony was to the effect that on Aug. 28, 1922, while he was negotiating with Lee for the purchase of the automobile, he called defendant company on the telephone to ascertain how much was still due under the lease. When asked whether he was purchasing the car, plaintiff replied, "I am about to purchase it." On the same day, according to plaintiff's testimony, he paid Lee $35 (all he ever paid him was $50), and under the same date verified a vendee's statement, in which it was stated that the plaintiff acquired the vehicle on Aug. 28, 1922. Of course, we have the fact that the

plaintiff was found not guilty of a violation of the act—perhaps because he did not take possession of the car until Sept. 22, 1922, and filed the affidavit in one at least of the two required places on the next day and took steps to have it filed in the other place—but to us it seems clear beyond argument that the defendant's employees acted upon reasonable cause when they instituted the proceeding based on the failure to file the affidavit within the prescribed time. As to the filing of the affidavit in Harrisburg, the testimony shows that Nov. 13, 1922, was the date appearing on the records. The fault for this may have been with the notary public to whom the plaintiff entrusted the statement for mailing, but the fact that the plaintiff was possibly not to blame for the delayed filing does not mean that the defendant's employees did not have a reasonable ground of belief that he had in fact violated the statute.

As to the second indictment, that for perjury, it is even more clear that probable cause existed. There appeared on the official records at Harrisburg an application bearing plaintiff's name and purporting to have been signed before a notary public, and this application admittedly contained untrue statements. The presence of the notary's signature and seal, with the usual accompanying statement that the paper was sworn to and subscribed before him, was sufficient to justify any one in relying on the genuineness of the affiant's signature. If in fact the signature was a forgery, the paper could not, of course, be used against plaintiff in any manner, despite the notary's seal (Smith v. Markland, 223 Pa. 605), but reliance could certainly be placed on it to the extent of supposing that it had been signed, sworn to and filed by the plaintiff.

It is argued that the defendant was put on notice that the plaintiff had not signed an application stating that the car he purchased was new. The plaintiff testified that one of the agents of defendant company called on him to take up the matter of payment of the remainder due on the automobile, and that when he offered to make payment in part then and the remainder shortly thereafter, defendant's agent refused the offer and said that if the entire amount due should not be paid within twenty-four hours, the plaintiff would be arrested for having signed an application for registration which stated that the car was new; whereupon, plaintiff testified, he told defendant's employee the application he signed stated the car was second-hand. This, the argument is, should have put defendant on notice that something was wrong, and it should not have relied on the application that was on file. The conversation just related took place about the middle of October, 1922, and yet plaintiff admitted that, despite the statement made to him that there was on file in Harrisburg an application purporting to have been signed and sworn to by him containing untrue answers to questions, he did nothing until after he received a letter from the State Highway Department on Nov. 1, 1922, and, indeed, it was not until four or five months later that plaintiff discovered the signature on the application was not his. If he was not put on notice that something was wrong with his application, how can he argue that defendant was? The warrant for his arrest was not procured until Nov. 10, 1922, and the testimony shows that at that time the false application was still on file.

The question here presented is whether there was reasonable cause for the prosecutions. The decision, at the end of plaintiff's case, as to whether the presence of probable cause had been shown rested exclusively with the court: Taylor v. American International Shipbuilding Corp., 275 Pa. 229; McCoy v. Kalbach, 242 Pa. 123; Roessing v. Pittsburgh Rys. Co., 226 Pa. 523; Robitzek v. Daum, 220 Pa. 61; Kuhns v. Ward-Mackey Co., 55 Pa. Superior Ct. 164. We are convinced that error was not committed in deciding that plaintiff's

own testimony showed probable cause; the non-suit was, therefore, properly entered: Taylor v. American International Shipbuilding Corp., 275 Pa. 229; Wekler v. New York Central R. R. Co., 275 Pa. 82.

Although not adverted to in his brief, counsel for plaintiff contended upon the argument that error was committed at the trial in permitting cross-examination of the plaintiff regarding the circumstances surrounding the prosecutions. These, it is said, were really matters of defence and belonged in defendant's case and should not have been permitted to be brought out on cross-examination. No objection based upon such reasons was made at the trial; but even if it had been, it would not have been sustained. The witness cross-examined was a party to the litigation; the facts as to which the cross-examination was directed were unquestionably relevant, and would not, in the judgment of the trial court, as a result of their introduction at that time, have confused the jury if it had turned out there was any question for the jury. Under these circumstances, the cross-examination was clearly proper: Greenfield v. Philadelphia, 282 Pa. 344.

In conclusion, it is not amiss for us to remark that we realize the annoyance and inconvenience to which the plaintiff was put by these prosecutions, and the further annoyance that the law does not furnish him with the redress he seeks; but in suits based on alleged malicious prosecution, as in the case of many unfounded libels (see Briggs v. Garrett, 111 Pa. 404, 419), there is "a rule of public policy of far more importance than the inconvenience of a single citizen." We must say here, as was said by Judge Head in Kuhns v. Ward-Mackey Co., 55 Pa. Superior Ct. 164: "Under such a state of facts, we are of the opinion a jury should not have been permitted to find a verdict for the plaintiff. If the facts we have stated, no one of which is really in controversy, do not constitute probable cause for beginning a criminal prosecution, it would be difficult to have prosecutions begun at any time except by the public authorities, and thus the interests of the public would suffer. It is true, when the case came on to be tried, the defendant was able to explain away the appearances of guilt to the satisfaction of the jury, and their verdict, of course, establishes that he was in fact innocent. But this in no way weakens the force of the circumstances we have referred to as they appeared to the prosecutor and must have appeared to any reasonable man."

Motion overruled.